FILED

2016 JAN 20 P 1:22

CLERK...
...U.S. DISTRICT...
...DISTRICT OF CA...CT

1  Felicia Medina (CA Bar No. 255804)
   fmedina@sanfordheisler.com
   **SANFORD HEISLER KIMPEL, LLP**
2  111 Sutter Street, Suite 975
   San Francisco, CA 94104
3  Telephone: (415) 795-2020
   Facsimile: (415) 795-2021
4
   H. Vincent McKnight, Jr. (D.C. Bar No. 293811)
5  (*pro hac vice* application forthcoming)
   vmcknight@sanfordheisler.com
6  **SANFORD HEISLER KIMPEL, LLP**
   1666 Connecticut Avenue, N.W., Suite 300
7  Washington, D.C. 20009
   Telephone:  (202) 499-5211
8  Facsimile: (202) 499-5199

9  *Attorneys for Relator Yuxin "Jay" Fang*

UNDER SEAL

10

11                  **UNITED STATES DISTRICT COURT**
                    **DISTRICT OF NORTHERN CALIFORNIA**
12

JSC

13

14  THE UNITED STATES OF AMERICA,       CV16          Case No. _____ 314
    *ex rel.*
15  YUXIN "JAY" FANG,
                                         **COMPLAINT**
16              Plaintiffs,

17         v.                            **FILED UNDER SEAL**
                                         **PURSUANT TO**
18  FORTINET INC.,                       **31 U.S.C. § 3730(b)2**
                 &
19                                       JURY TRIAL DEMANDED
    ARROW  ENTERPRISE  COMPUTING
20  SOLUTIONS INC.,

21              Defendant.

22

23

24

25

26

27

28

                                                     Case No. _____

The United States of America *ex rel.* Yuxin "Jay" Fang ("Plaintiffs"), by and through their attorneys Sanford Heisler Kimpel, LLP state as follows for their complaint against; Fortinet, Inc. and Arrow Enterprise Computing Solutions ("Defendants"):

## I.    INTRODUCTION

1.    The United States of America, through the Relator Yuxin "Jay" Fang ("Relator," "Relator Fang," or "Fang"), seek to recover treble damages and civil penalties arising from false statements and claims made, used, or caused to be made by Defendants to the United States, in violation of the federal False Claims Act, 31 U.S.C. §§ 3729-33, *et seq.*

2.    The General Services Administration ("GSA") is an independent agency of the United States Government that handles numerous administrative functions for many other agencies, including purchases and acquisitions. It maintains and awards Federal Supply Schedule ("FSS") contracts, which are indefinite delivery, indefinite quantity contracts with commercial firms to provide supplies and services to Government agencies throughout the world. The FSS is divided into several "schedules," each of which is a vehicle to buy and sell a certain type of product.

3.    For example, Schedule 70 is devoted to "General Purpose Commercial Information Technology Equipment, Software, and Services." Vendors that wish to offer information technology ("IT") supplies to the Government through the GSA must apply and obtain a schedule contract under Schedule 70. (Exhibit B).

4.    The GSA negotiates each vendor schedule contract and attempts to reach an agreement that achieves the best value for the U.S. Government. The GSA also requires that all of its vendor schedule contracts comply with U.S Government regulations, policies, and procurement objectives.

5.    Compliance with the federal Trade Agreements Act ("TAA") (19 U.S.C.  § 2501 *et seq.*) is one of the requirements that all vendors seeking GSA contracts must meet.  The GSA, on its website, states that the TAA is:

> [T]he enabling statute that implements numerous multilateral and bilateral international trade agreements and other trade initiatives.  Since the estimated dollar value of each Schedule exceeds the established Trade Agreements Act (TAA) threshold, the TAA is applicable to all Schedules.  *In accordance with the TAA, only U.S.-made or designated country end products shall be offered and sold under Schedule contracts.*

GSA website, at http://www.gsa.gov/portal/content/200369?utm_source=FAS&utm_medium= print-radio&utm_term=schedules-ordering&utm_campaign=shortcuts, visited August 25, 2015. (emphasis supplied) In other words, with very rare exceptions, products sold to the Government through the GSA must have been manufactured either in the U.S. or in another "designated country." It is illegal to sell the U.S Government products on GSA schedules that were manufactured in a nondesignated country.

6.    The U.S.  Government maintains a list of designated countries.  Under GSA regulations, GSA vendors are not allowed to offer any product covered by the World Trade Organization's Government Procurement Agreement for sale on the FSS Schedule if the product does not originate in a designated country.[1] For example, China and Thailand are two countries that are *not* designated countries.

7.    Defendant Fortinet is a vendor that sells TAA-certified products to distributors with GSA contracts. Distributors with GSA contracts are required to only sell the United States Government products that are manufactured in so-called "designated countries" – countries that

---

[1] In rare circumstances, a contracting officer can find that an exception applies, as defined by the Federal Acquisition Regulations.  Such exceptions are not at issue here.

3                    Case No. _____

COMPLAINT

1   are recognized under certain international treaties detailed herein.  Defendant Fortinet certified to

2   its distributors that the products they are offering were manufactured in designated countries,

3   when in fact they were manufactured in nondesignated countries, including Taiwan (prior to

4   August 11, 2009) and China.  (Exhibit B has Fortinet's GSA contract, Exhibit Y and all of the

5   invoices, show them certifying things as TAA compliant.) In offering and selling products from

6   nondesignated countries while certifying that those products were from designated countries,

7   Defendant Fortinet caused false claims to be made to the Government in violation of the False

8   Claims Act.

9

10      8.      Defendant Fortinet sold Ingram Micro Inc., Sprint Co.[2], Tech Data Co., and

11  Defendant Arrow Electronics Inc., and among others, products made in non-designated countries

12  as TAA complaint.  (Exhibit A).

13      9.      Defendant Fortinet has entered into vendor schedule contracts with the listed

14  distributors and other distributors to provide information technology equipment and services, and

15  other products to the U.S. Government.  (Exhibit B). These vendors have certified compliance

16  with applicable laws and regulations, including the TAA.

17

18      10.     Defendant Arrow is one of the distributors who receives products from Fortinet

19  and supplies them to the U.S. Government through the GSA.  Accordingly, Arrow certified

20  compliance with the TAA and violated said certifications when it sold Fortinet products to the

21  U.S. Government that did not originate in designated countries.

22      11.     Relator Fang discovered that Defendants have been selling or causing the sale of

23  products which are not designated country end products to GSA contractors.  Particularly,

24  Relator unearthed that Defendant Fortinet was selling products made in nondesignated countries

25  as TAA complaint and actively obscuring the fact, in material violation of GSA regulations.  By

26

27

28      [2] Formerly known as Sprint Nextel Co. until 2013.  Referred to as ''Sprint Nextel'' by Defendant Fortinet.

4                           Case No. _____

1  doing so, Fortinet caused these products to be unlawfully sold to the Government by Fortinet's

2  distributors.   Relator Fang found this information as a regular part of his duties as a Logistics

3  Specialist at Fortinet.

4       12.     Alternatively, where Fortinet distributors, such as Defendant Arrow, did not rely

5  on Fortinet representations of TAA compliance, Fortinet distributors such as Defendant Arrow

6  intentionally sold and caused the sale of TAA non-compliant products to the U.S.  Government.

7       13.     Relator Fang discovered that Defendant Fortinet was designating products as

8  having been produced in designated countries despite actively knowing that they were

9  manufactured in Taiwan (prior to August 11, 2009)  or  China. Fortinet's distributors would then

10  list the products on GSA Advantage, wherein agencies, such as the Department of the Air Force

11  or the Department of the Navy, would purchase these products for government use.  (Exhibit C).

13

| | A | D | F | H | I |
|---|---|---|---|---|---|
| 1 | mfr_name | mfr_part_number | purchase_date | agency_name | vendor_name |
| 2 | FORTINET | FG-50M-US | '2008-02-25 00:00:00' | Department of the Air Force | NH&A LLC. |
| 3 | FORTINET | FG-50M-US | '2008-02-25 00:00:00' | Department of the Air Force | NH&A LLC. |
| 4 | FORTINET | FG-60B-G | '2009-08-25 00:00:00' | Department of the Air Force | ARROW ECS |
| 5 | FORTINET | FG-60B-BDL-G | '2009-10-01 00:00:00' | Department of the Air Force | ARROW ECS |
| 6 | Fortinet | FG-110C-G | '2010-08-16 00:00:00' | Department of the Air Force | Arrow ECS |
| 7 | FORTINET | FG-50B-BDL-US | '2010-08-31 00:00:00' | Department of the Navy | GOVERNMENT TECHNOLOGY SOLUTION |
| 8 | FORTINET SME PRODUCTS | FG-80C-US | '2011-05-18 00:00:00' | Department of the Air Force | MILLENIUM SOLUTIONS INC. |
| 9 | Fortinet | FC-10-L0102-311-02-12 | '2011-09-16 00:00:00' | Department of the Navy | Arrow ECS |
| 10 | Fortinet | FC-10-00052-950-02-12 | '2011-09-16 00:00:00' | Department of the Navy | GOVERNMENT TECHNOLOGY SOLUTION |
| 11 | Fortinet | FMG-400B-G | '2011-09-20 00:00:00' | Department of the Navy | Arrow ECS |
| 12 | Fortinet | FC-10-00052-950-02-12 | '2012-01-12 00:00:00' | Department of the Navy | Arrow ECS |
| 13 | Fortinet | FC-10-L0102-311-02-12 | '2012-01-12 00:00:00' | Department of the Navy | Arrow ECS |

**Figure 1 – Exhibit C sample.  This is report created and provided by GSA under a FOIA request, detailing the sale of select Fortinet products to government agencies.**

14       14.     These purchases are "claims" for the purposes of the federal False Claims Act, 31

22  U.S.C.  § 3729 *et seq.*  ("FCA").

23       15.     For claims after June 7, 2008, 31 U.S.C.  § 3729(a)(1)(B) holds liable any person

24  who "knowingly makes, uses, or causes to be made or used, a false record or statement *material*

25  *to a false or fraudulent claim.*" (Emphasis added)

26       16.     Based on these provisions, Relator Fang seeks to recover damages and civil

27  penalties arising from Defendant Arrow's material false statements and Defendant Fortinet's

COMPLAINT

presentation of false claims to its distributors in connection with the sale of products from nondesignated countries in violation of the World Trade Organization-Government Procurement Act, the Trade Agreements Act, GSA contracts and policies, and applicable Federal Acquisition Regulations, including but not limited to "FAR Subpart 25.4 – Trade Agreements."

17.     Relator Fang has direct and independent knowledge that the Defendant Fortinet is selling products to its distributors with GSA contracts that did not originate in designated countries under the TAA, and are therefore making material false statements and causing false claims to be presented to the United States.

## II.     JURISDICTION AND VENUE

18.     This is a civil action arising under the laws of the United States to redress violations of 31 U.S.C. §§ 3729 *et seq.*  This Court has jurisdiction over the subject matter of this action pursuant to: (i) 31 U.S.C.  §3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§ 3729 and 3730; (ii) 28 U.S.C. § 1331, which confers federal subject matter jurisdiction; and, (iii) 28 U.S.C. § 1345, because the United States is a plaintiff.

19.     This suit is not based upon prior public disclosures of allegations or transactions in a criminal, civil, or administrative hearing, lawsuit, or investigation, or in a Government Accounting Office or Auditor General's report, hearing, audit, or investigation, or from the news media.

20.     To the extent that there has been a public disclosure unknown to Relator Fang, Fang is an original source under 31 U.S.C. § 3730(e)(4).   He has direct and independent knowledge of the information upon which the allegations are based and has voluntarily provided the information to the Government before filing an action under the False Claims Act based on this information.

6                          Case No. _____

21.     Relator Fang has provided to the Attorney General of the United States and to the United States Attorney for the Northern District of California a statement summarizing known material evidence and information related to the Complaint, in accordance with the provisions of 31 U.S.C. § 3730(b)(2).  These disclosure statements are supported by material evidence.

22.     This Court has personal jurisdiction over Defendants under 31 U.S.C. § 3732(a) because Defendants can be found, reside, or transact business in this District, and because an act proscribed by 31 U.S.C. § 3729 occurred in this District.   Defendants presented false or fraudulent claims to the United States in this District.

23.     Venue is proper in this District under 31 U.S.C. § 3732(a) and 28 U.S.C. § 1391.

III.     PARTIES

24.     Relator Fang is a resident of the Xian Metro Area in Shaanxi, China.  At all times relevant herein, Relator worked as a Logistics Specialist for Fortinet, Inc. -- a company selling products and services to distributors that have contracts with Federal Government agencies.  In this capacity, he gained direct and independent knowledge of the allegations contained in this Complaint.  Relator worked at Fortinet's Vancouver, Canada offices but no longer works with Fortinet.

25.     Defendant Fortinet is headquartered at 899 Kifer Rd, Sunnyvale, CA 94086 and has multiple offices in various countries including Canada.

26.     Defendant Arrow Electronics is headquartered at 9201 E.  Dry Creek Road, Centennial, CO 80112.   Arrow sells products to the U.S.  Government under contract GS-35F-0296R, and lists Fortinet as a Vendor Partner on its GSA Schedule.[3]

27.     Defendants sold products originating in nondesignated countries as TAA compliant, which contradictorily requires said products to originate in designated countries, to its

---

[3] *See* http://ecs.arrow.com/gsa/ (under heading "What vendors are partnered on the Arrow ECS GSA Schedule?")

Case No. _____

COMPLAINT

1  distributors with GSA contracts including but not limited to contract number GS-35F-0511T

2  (Immix Group),[4] GS-35F-0097Y (Ingram Micro), GS-35F-0329L (Sprint), GS-35F-0052Y (Tech

3  Data) and GS-35F-0296R (Arrow Electronics).

4  **IV.    THE FEDERAL FALSE CLAIMS ACT**

5       28.    The FCA, originally enacted during the Civil War, was substantially amended by

6  the False Claims Amendments Act of 1986, which were signed into law on October 17, 1986.

7
8  Congress enacted these amendments to enhance the Government's ability to recover losses

9  sustained as a result of fraud against the United States and to provide a private cause of action for

10 the protection of employees who act in furtherance of the purposes of the FCA.  Congress acted

11 after finding that fraud in federal programs and procurement was, and remains, pervasive and that

12 the FCA, which Congress characterized as the primary tool for combating fraud in Government

13 contracting, was in need of modernization.

14
      29.    The FCA provides for any person who knowingly submits a false or fraudulent
15
16 claim to the Government for payment or approval is liable for a civil penalty of up to $11,000 for

17 each such claim, plus three times the amount of the damages sustained by the Government, as

18 well as attorneys' fees.  The FCA allows any person having information regarding a false or

19 fraudulent claim against the Government to bring a private cause of action for himself and on

20 behalf of the Government and to share in any recovery.  The complaint is to be filed under seal

21 for sixty days (without service on the Defendants during such sixty-day period) to enable the

22
23 Government (a) to conduct its own investigation without the Defendants' knowledge, and (b) to

24 determine whether to join the action.

25      30.    The FCA was further amended by the Fraud Enforcement Recovery Act ("FERA")

26 passed by Congress and signed into law on May 20, 2009 for the express purpose of

27
      ---
28      [4] Immix Group was acquired by Arrow Electronics in 2015.  *See*
   http://www.immixgroup.com/company/who-we-are/

1  strengthening the tools available to combat fraud and to overturn judicial decisions that had

2  weakened the False Claims Act. Pub. L. No. 111-21, 123 Stat. 1617 (2009).

3      31.  While most of the new provisions apply only to claims after the effective date of

4  the statute, Congress determined that 31 U.S.C. § 3729(a)(1)(B), which revised the former

5  section designated as 31 U.S.C. § 3729(a)(2) pertaining to liability for false statements, "...shall

6  take effect as if enacted on June 7, 2008, and shall apply to all claims ... that are pending on or

7  after that date." §4(f) of FERA, 123 Stat. at 1625 (see note following 31 U.S.C. § 3729).

8

9      32.  For claims prior to June 7, 2008, 31 U.S.C. § 3729(a)(2) holds liable any person

10  who "knowingly makes, uses, or causes to be made or used, a false record or statement *to get a*

11  *false or fraudulent claim paid or approved by the Government*." *Id.* (Emphasis added.)

12      33.  For claims after June 7, 2008, 31 U.S.C. § 3729(a)(1)(B) holds liable any person

13  who "knowingly makes, uses, or causes to be made or used, a false record or statement material

14  to a false or fraudulent claim." *Id.* (Emphasis added.)

15
16      34.  The FCA defines a "claim" as:

17      (A)  [...] any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the

18  money or property, that—

19          (i)  is presented to an officer, employee, or agent of the United States; or

20

21          (ii)  is made to a contractor, grantee, or other recipient, if the money or property is to be spent or used on the Government's behalf or to

22  advance a Government program or interest, and if the United States Government—

23

24              (I)  provides or has provided any portion of the money or property requested or demanded; or

25              (II)  will reimburse such contractor, grantee, or other recipient

26  for any portion of the money or property which is requested or demanded; and

27

28      (B)  does not include requests or demands for money or property that the Government has paid to an individual as compensation for Federal

1

employment or as an income subsidy with no restrictions on that individual's use of the money or property.

2

3   31 U.S.C. § 3729 (b)(2).

4       35.     All U.S. Government purchases from Defendant Fortinet's distributors or from

5   Defendant Arrow through GSA Advantage of equipment certified by Defendant Fortinet to have

6   come from a designated country, where that equipment was actually manufactured in a

7   nondesignated country, are "claims" for the purposes of the FCA.

8

9   **V.      THE GENERAL SERVICES ADMINISTRATION AND THE FEDERAL SUPPLY
           SCHEDULE**

10      36.     The GSA is an agency of the Federal Government that handles many

11  administrative functions for the Federal Government, including purchasing and acquisitions. It

12
    maintains and awards Federal Supply Schedule ("FSS") contracts, which are indefinite delivery,
13
    indefinite quantity contracts with commercial firms to provide supplies and services to
14
15  Government agencies throughout the world. The FSS is divided into several "schedules," each of

16  which is a vehicle to buy and sell a certain type of product. *See* FAR Subpart 8.4 – Federal

17  Supply Schedules.[5]

18      37.     For example, Schedule 70 is devoted to "General Purpose Commercial
19
    Information Technology Equipment, Software, and Services. "Vendors that wish to offer IT
20
21  supplies to the Government through the GSA must apply and obtain a schedule contract under

22  Schedule 70. *See* FAR Subpart 38.1 – Federal Supply Schedule Program.

23      38.     The GSA negotiates each contract and attempts to achieve an agreement that

24  achieves the best value for the Government, and complies with the United States' policy and

25  procurement objectives. *See* FAR Subpart 8.1 *et seq.* Government contracting officers may

26

27  _____

28  [5] The GSA's procurement functions are largely regulated by what are commonly referred to as the "FAR" or Federal Acquisition Regulations.

1  purchase products through the GSA Advantage web portal, and may assume that the product
2  price is fair and reasonable.  They can also assume that vendors with schedule contracts are
3  compliant with all applicable laws and regulations.

4
   **VI.    THE TRADE AGREEMENTS ACT**
5

6      39.    Vendors selling products to the federal Government must obey under the FSS
7  Contract the Trade Agreements Act of 1979, 19 U.S.C.  § 2501 *et seq.*  ("TAA").  Congress
8  articulated its reasons for passing the TAA at 19 U.S.C.  § 2502.  One of these reasons is the
9  approval and implementation of trade agreements negotiated under the Trade Act of 1974. *Id.* at
10
11  § 2502 (1).

12     40.    Congress and the President, by virtue of this legislation, endorsed and accepted
13  certain trade agreements and mechanisms to implement these agreements.  The covered
14  agreements are listed at 19 U.S.C § 2503(c).

15     41.    Subsection (c)(3) applies the Trade Agreements Act to the Agreement on
16  Government Procurement.  19 U.S.C.  § 2503(c)(3) (1979).
17

18     42.    Under the terms of the World Trade Organization Government Procurement
19  Agreement ("WTO GPA"), signatory countries have agreed to allow industries from WTO
20  member countries to freely participate in certain aspects government procurement on equal
21  footing with domestic companies.

22     43.    For example, under this agreement industries based in Great Britain are allowed to
23  freely compete for federal Government contracts in the United States of America on an equal
24  footing with United States domestic companies.  Similarly, companies from the United States of
25  America can freely compete for contracts issued by Great Britain.
26
27     44.    The United States has determined through the TAA and Federal Acquisition
28  Regulations that the WTO GPA applies to a number of agencies, including the GSA.

COMPLAINT

45. In practical terms, this means that federal procurement regulations, which must be followed by vendors selling products and equipment to the U.S. Government through the GSA and to states like California through the Cooperative Purchasing program, forbid: (a) the sales to certain federal agencies, including the GSA; (b) of certain products, including information technology products; (c) that are from so-called "nondesignated countries," except under limited circumstances, not applicable here.

46. "Nondesignated countries" are countries with which the United States does not have an official trade agreement under the WTO GPA, and they include, but are not limited to, the People's Republic of China, Malaysia, Thailand, and the Republic of China (prior to 2009).

**VIII. DEFENDANT ARROW PRESENTED FALSE CLAIMS BY SELLING PRODUCTS TO THE U.S. GOVERNMENT THAT CAME FROM NONDESIGNATED COUNTRIES WHEN DEFENDANT FORTINET CERTIFIED THEY WERE FROM DESIGNATED COUNTRIES.**

47. By causing the sale of products to the United States Government that did not originate in designated countries under the TAA, Defendants caused material false claims to be made to the U.S. Government for payment. Relator Fang has direct and independent knowledge of these facts.

48. The examples presented in this complaint are illustrative of a larger scheme perpetrated over an extensive period of time by Fortinet, Arrow Electronics, and other vendors. Relator's claims are not limited to the products and transactions in the Complaint. Relator's direct and independent knowledge is similarly not limited to the products and transactions contained in the Complaint. Additional evidence pertaining to more sales by Arrow Electronics and other vendors of Fortinet products that did not originate in designated countries is within the custody and control of Fortinet, Arrow Electronics, and other vendors.

49. Defendant Fortinet sold these products from nondesignated countries to its distributors, including Defendant Arrow Electronics, as TAA compliant and therefore, as

Case No. _____

1   originating in designated countries. (Exhibit R, Exhibit A).   Distributors such as Arrow

2   Electronics then sold them to the Government and presented false claims for the payment of the

3   sale of these items[6].   (Exhibit C). Defendant Fortinet  represented that these products were from

4   TAA compliant countries when in fact they came from nondesignated countries.  By making such

5   representations, Defendant Fortinet caused the submission of false and fraudulent claims for

6   payment to the Government.

| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Invoice # | # of pcs | Invoice Date | Manufacture | Main Invoice # | COO | Sold to | Product # | Notes |
| 9 | INV2009030083 | 1 | 3/18/2009 | ADLINK | | 2009020201 | TW | FINETEC | FG5001A-SW | Combined with |
| 10 | INV2009090213 | 9 | 9/26/2009 | ADLINK | | 2009020201 | TW | FINETEC | FG5001A-SW | Of batch, 6 wer |
| 11 | INV03184497 | 13 | 6/11/2010 | MSI | | | CN | FINETEC | FG-1240B | |
| 12 | INV03187333 | 7 | 6/25/2010 | MSI | | | CN | Arrow | FG-1240B | |
| 13 | INV03204235 | 32 | 9/29/2010 | MSI | | | CN | FINETEC | FG-1240B | |
| 14 | INV03204233 | 5 | 9/29/2010 | MSI | | | CN | FINETEC | FG-1240B | |
| 15 | INV03204559 | 4 | 9/30/2010 | MSI | | | CN | Tech Data | FG-1240B | Same as below |
| 16 | | 4 | 9/30/2010 | Flex | | | CN | Tech Data | FG-1240B | Same as above |
| 17 | INV03212488 | 10 | 11/15/2010 | MSI | | B839590 / B839594 | CN | Ingram Micro | FG310B | 2 MSI invoices i |
| 18 | INV03191303 | 7 | 6/19/2010 | MSI | | B839590 / B839594 | CN | NOTE: not clea | FG310B | |

**Figure 2 - Sample from Exhibit A. Information identifies COO for certain Fortinet products.  Additionally,
copies of some of the invoices listed here are included as exhibits.**

16       50.       For example, Exhibit R shows the sale of 32 units of Fortinet item FG-1240B-G to

17   Finetec Computer at a price of $390,302.40.   The bottom of the invoice, like all the ones

18   provided, states "TAA COMPLIANT INVENTORY."  By contrast, Exhibit A shows that despite

19   being manufactured by 2 suppliers, Fortinet product FG-1240B is exclusively produced in China.

20   By falsely representing these products to vendors as TAA compliant, Fortinet caused the sale of a

21   TAA non-compliant product to the U.S.  Government in violation of the False Claims Act.  To

22   the extent that any vendors were aware of the origin of these products, their selling of these

---

[6] Exhibit C was produced by GSA following a Freedom of Information Act (FOIA) request.
The color coating within the exhibit corresponds to the color coating within Exhibit A.  The products for
which a country of origin could be identified were matched by color.  As can be seen, the manufacturers
for each product were located exclusively in China.  These sales thus constitute a violation of the GSA
regulations.

COMPLAINT

1   products as TAA compliant was therefore also a misrepresentation and a violation of the False

2   Claims Act.

3        51.    Where distributors such as Arrow Electronics did not rely on Fortinet's

4   representations regarding TAA compliance or were aware of the products' TAA non-compliance,

5   Arrow and other distributors themselves sold or caused the sale of TAA non-compliant products

6   to the U.S. Government.

7        52.    The Government sustained damages because of Defendants' actions.

8

9   IX.    **RELATOR DISCOVERS THE FRAUD**

10       53.    Relator Fang was a Logistics Specialist for Fortinet, Inc. (hereinafter "Fortinet")

11  at a satellite office located at 4190 Still Creek Dr #400, Burnaby, BC V5C 6G9, Canada. Fortinet

12  sells a variety of high-performance network security tools including firewalls and routers and the

13  services needed to upkeep them to many contractors of Government departments. Examples of

14  the products that were represented as GSA compliant under this scheme include security blade

15  servers, VPN firewalls, and wireless routers.

16

17       54.    In 2008, Relator Fang became aware that non-compliant products under TAA or

18  GSA agreements were being offered for sale to the Government by Fortinet's distributors. He

19  noticed that Fortinet was improperly selling products manufactured in nondesignated countries as

20  TAA compliant, and in turn, that Fortinet's distributors were selling these items on GSA

21  Advantage.

22       55.    In the routine course of working in the production, shipping, and purchasing of

23  products for Fortinet, Relator received product lists, shipping labels, and other information that

24

25  identified the country of origin for each product. (Exhibit O[7]). Throughout the regular course of

26

27       [7] The email exchange features one of Relator's supervisors, Eddy Yuen, ordering that 50 of
    Fortinet product FG-110C be moved into TAA complaint inventory. However, the excel spreadsheet
28  attached within the email contains a clear reference to FG-110C's country of origin. It is listed as
    "China."

1   his job, Relator received instructions from his superiors to "rework" shipments of products.

2   (Exhibit E, F, G, I, and J). The term "rework" was commonly understood to mean relabeling

3   products from nondesignated countries to remove any mention of their country of origin. This

4   was a direct effort by Fortinet to obscure the country of origin of products from nondesignated

5   countries that were then sold to Government contractors as TAA compliant.

6       56.     The effort involved receiving products manufactured in nondesignated countries

7   from Fortinet's Headquarters in Sunnyvale, California and relabeling them with new labels that

8   lacked any mention of their country of origin. Relator Fang commonly witnessed the import of

9

10  Chinese made products with corresponding labels stating "Made in China." (Exhibit D). Fortinet

11  employees then removed the "Made in China" labels and replaced them with new labels that did

12  not state the products' country of origin. This was done on both individual products and on the

13  packages that they arrived in. The products would then be designated as TAA compliant and

14  shipped to vendors for sale to the U.S. Government. Relator complained to his supervisors about

15  the practice but was told to do it anyways. Troubled by these instructions, Relator began

16  collecting removed labels and gathering information about Defendant Fortinet's routine practices.

17

18

19

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

**FORTINET**

Product Name: **FORTIGATE-110C**

Model/SKU: **FG-110C**

Fortinet P/N: P04551-05-04

HW ID: C4HA15-05AB-0000

Quantity: 1 pcs

SN: FG100C3G09612357

**Product of China**

18

19

**Figure 3 - Exemplar of original Fortinet label placed on product packaging that was to be removed and replaced during a "rework".**

20    57.    One of relator's supervisors, Eddy Yuen, would often instruct Relator's unit to

21  "rework" incoming shipments and/or to change the serial numbers on products before shipping

22  them back to company headquarters in Sunnyvale, California. (Exhibit N[8]). For those products

23  whose serial numbers were altered, notices of the change were not included in the return

24  shipment or noted in Fortinet's internal system.

25

26

27

28

[8] One of Relator's supervisors, Patrick Yip, provides the original and altered serial numbers for 35 units of Fortinet product FG-5001SX that were "reworked" and then sent to the US. Fortinet product FG-5001 appears in Exhibit A with a COO of Taiwan, prior to the country's inclusion as a designated country within TAA guidelines.

COMPLAINT

58.    To the best of Relator's knowledge, this process of "reworking" the labels on individual products and on their shipping crates mainly occurred for those products that were eventually designated as TAA compliant.  Such "reworking" was otherwise not initiated for products.

59.    Relator's supervisors would often approve the "reworking" of shipments from nondesignated countries, essentially designating them as TAA compliant, despite clear documentation that the products were from nondesignated countries.  (Exhibit E).  Additionally, Relator's supervisors actively avoided detailing the scheme in writing.

| | A | B | C | D | E | F | G |
|---|---|---|---|---|---|---|---|
| 13 | Fortinet Internal Transfer ,  Refurbished units | | | | | | |
| 14 | Item | Description | COO | HTS CODE | Qty | U/P | Amount (CAD$) |
| 15 | FG-110C | Network security appliance | China (PRC) | 8517.69.0000 | 51 | $113.00 | $5,763.00 |
| 16 | FAZ-800 | Network security appliance | Taiwan | 8517.69.0000 | 2 | $273.24 | $546.48 |
| 17 | FAZ-800B | Network security appliance | China (PRC) | 8517.69.0000 | 3 | $259.00 | $777.00 |
| 18 | FG-30B | Network security appliance | China (PRC) | 8517.69.0000 | 2 | $63.00 | $126.00 |
| 19 | FAZ-100B | Network security appliance | China (PRC) | 8517.69.0000 | 2 | $259.00 | $518.00 |
| 20 | FG-60 | Network security appliance | China (PRC) | 8517.69.0000 | 1 | $83.45 | $83.45 |
| 21 | FG-3810A | Network security appliance | Canada | 8517.69.0000 | 1 | $803.42 | $803.42 |
| 22 | FG-500A | Network security appliance | China (PRC) | 8517.69.0000 | 2 | $184.54 | $369.08 |
| 23 | FWF-81CM | Network security appliance | China (PRC) | 8517.69.0000 | 1 | $95.00 | $95.00 |
| 24 | wireless Lan Card | Network security appliance | China (PRC) | 8517.69.0000 | 10 | $26.50 | $265.00 |
| 25 | | | | | 75 | Total: | $9,346.43 |

Figure 4 – Sample from an attachment included in Exhibit 5.  The exhibit is a copy of an internal email requesting the "reworking" of Fortinet products for TAA-compliant inventory, despite an attachment to the email showing non-compliant COOs for all of the products being "reworked." (Column C).

60.    Relator noted that often times the unique serial number on each product was slightly altered after being "reworked".   (Exhibit N).   Fortinet's products are individually catalogued using a 16 character serial number, which is originally designated by the manufacturer.  A serial number uniquely identifies every unit and can be used to trace individual units back to their original source.  Altering the serial number in any capacity means tracing the product back to its original source or manufacturer is no longer possible unless the changes are noted at every step of the way.  The new labels provided on these "reworked" products included the updated serial number and removed any reference to country of origin.

COMPLAINT

61.     Relator collected data regarding products sold by Fortinet and discovered that several non-compliant products were in fact being sold to contractors of the United States Government as TAA compliant.  These products were sold to the contractors despite Fortinet having knowledge that they were destined for U.S.  Government purchasers, in violation of TAA regulations, the express certifications required by GSA Advantage, and the False Claims Act.

62.     Government contractors who were sold products from nondesignated countries as TAA compliant by Fortinet includes but are not limited to, Ingram Micro Inc., Sprint Nextel Co., Fine Tec Inc., Arrow Electronics Inc., and Tech Data Corp.  Arrow Electronics is a defendant in this case.

63.     Government contractors who sold Fortinet products from nondesignated countries as TAA compliant directly to the Government includes but is not limited to Arrow Electronics Inc., Government Technology Solutions, Millennium Solutions Inc., EC America Inc., and Global Data Center Inc.  (Exhibit C).

64.     As part of this investigation into this matter, Relator Fang gathered reports that compared products that were not TAA compliant with sales that were made on GSA Advantage.  Despite the fact that vendors listing on GSA Advantage must only offer and sell TAA compliant products, many of the sales included non-compliant products.  Comparing the sales data with the country of origin charts in his possession, it was evident that Defendant Fortinet's distributors were selling products to the United States Government that did not originate in a designated country.

65.     Defendant Fortinet knowingly sold these products from nondesignated countries to the U.S.  Government's contractors, while falsely certifying they were TAA complaint.  (Exhibit Y).  Accordingly, Fortinet caused U.S.  Government contractors to present false claims for the payment and for the sale of these items.  To the extent that U.S. Government contractors, such as Defendant Arrow Electronics, were aware of the true nondesignated origins of these

COMPLAINT

products or otherwise did not rely on Fortinet representations, the contractors themselves are liable for presenting false claims for payment to the Government.  The Government sustained damages because of Defendants' actions.

66.     Information provided by GSA showcases how different Government departments unwittingly purchased thousands of dollars' worth of Fortinet products manufactured in nondesignated countries.  These Departments include, but are not limited to, the Department of the Air Force and the Department of the Navy.  (Exhibit C)  Relator's claims are not limited to these specific sales and are illustrative of a larger scheme perpetrated by Fortinet and its contractors, such as Arrow Electronics.  Documents and evidence related to this scheme of selling products originating in nondesignated countries to the U.S. Government are within the exclusive control of Fortinet, Arrow Electronics, and other Fortinet distributors.

67.     Internal Fortinet invoices obtained by Relator Fang provide documentation of the country of origin of many of Fortinet's products that were "reworked", and thus designated as TAA compliant, despite direct evidence to the contrary.

## X.     REPRESENTATIVE EXAMPLE

68.     The following representative example is meant to showcase the pipeline between the manufacturers of Fortinet products in nondesignated countries to the U.S. Government, through GSA.

69.     From line 35, Exhibit A, we can see an invoice for 17 FG-50B Fortinet products. The COO for the products is listed as China, with the manufacturer being Flextronics.  This product was sold to Arrow Enterprise Computing Solutions.



| | A | B | C | D | E | F | G | H | I |
|---|---|---|---|---|---|---|---|---|---|
| 1 | Invoice # | # of Pcs | Invoice Date | Manufacturer | Manu Invoice # | COO | Sold to | Product | Notes |
| 35 | INV03202088 | 17 | 9/20/2010 | Flex | | 440027 CN | Arrow | FG50B | |

Figure 5 - The above referenced line from Exhibit A.

Case No. _____

COMPLAINT

1
2
3
4

70.     Exhibit Y, an internal Fortinet Invoice, shows the purchasing of these 17 items by Arrow ECS, with the items being shipped to Government Technology Solutions.  The invoice clearly states at the bottom "TAA-COMPLIANT INVENTORY."  The total price for these 17 products was $9,282.00.

5
6
7
8
9

71.     Pages 8 and 36 of Exhibit D, showcase the labels removed from "reworked" units of FG-50B. Each one reads "Product of China."  The labels referenced are all dated within 2010, the same year the above transactions, and the following to the Government, were made.  This confirms that the Fortinet product FG-50B is manufactured in China.

10
11
12
13
14
15
16
17
18
19



**Figure 6 - Exemplar of original Fortinet label placed on individual products that were to be removed and replaced during a "rework."**

20
21
22
23

72.     Exhibit C, produced by GSA under a FOIA request, documents the purchasing of 17 units of Fortinet product FG-50B by the Department of the Navy from Government Technology Solutions for $10,541.07.

24
25

| item_name | agency_name | vendor_name | quantity | extended_price |
|---|---|---|---|---|
| FORTIGATE-50B | Department of the Navy | GOVERNMENT TECHNOLOGY SOLUTION | 17 | 10541.70 |

26

**Figure 7 – A sample of the above referenced transaction from Exhibit C.**

27
28

COMPLAINT

73.     The previous case is merely exemplary of a greater trend at Fortinet to obscure the country of origin of its products, in direct violation of TAA guidelines and of their GSA contract. (Exhibit B).  Further investigation will prove greater damages.  Further evidence is within the exclusive control of Fortinet, Arrow Electronics, and other Fortinet distributors.

74.     Furthermore, companies such as Arrow ECS, which also sell directly to the Federal Government, have a responsibility to ensure that all products they receive and sell as TAA complaint actually fit the designation and that the proper documentation exists for it.

## COUNT I

*(False Claims Act, 31 U.S.C. §3729 (a)(1))*

75.     Plaintiff Fang alleges and incorporates by reference the allegations made in Paragraphs 1 through 69 of this Complaint.

76.     This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. § 3729 *et seq.*

77.     By virtue of the acts described above, the Defendants knowingly caused to be submitted false or fraudulent claims for payment and reimbursement by the United States Government *before June 7, 2008,* and the United States, unaware of the falsity of the records, statements and/or claims made by the Defendants and in reliance on the accuracy thereof, paid for aforementioned false claims because the Defendants intentionally or with gross disregard for the truth sold products to the Government that did not originate in the United States or a designated country.

78.     As set forth in the preceding paragraphs, Defendants violated 31 U.S.C. § 3729 and has thereby damaged and continues to damage the United States Government by its actions in an amount to be determined at trial.

## COUNT II

COMPLAINT

*(False Claims Act, 31 U.S.C. §3729 (a)(1)(A))*

79.     Plaintiff Fang alleges and incorporates by reference the allegations made in paragraphs 1 through 69 of this Complaint.

80.     This is a claim for treble damages and forfeitures under the False Claims Act, 31 U.S.C. § 3729 *et seq.*

81.     By virtue of the acts described above, the Defendants knowingly caused false or fraudulent claims to be submitted for payment and reimbursement by the United States Government *after June 7, 2008*. The United States, unaware of the falsity of the records, statements and/or claims made by the Defendants and in reliance on the accuracy thereof, paid for aforementioned false claims because the Defendants intentionally or with gross disregard for the truth sold products to the Government that did not originate in the United States or a designated country.

82.     As set forth in the preceding paragraphs, Defendants violated 31 U.S.C. § 3729 and has thereby damaged and continues to damage the United States Government by its actions in an amount to be determined at trial.

## COUNT III

*(False Claims Act, 31 U.S.C. §3729 (a)(2))*

83.     Plaintiff Fang realleges and incorporates by reference the allegations made in Paragraphs 1 through 69 of this Complaint.

84.     This is a claim for treble damages and for forfeitures under the False Claims Act, 31 U.S.C. § 3729 *et seq.*

Case No. _____

COMPLAINT

85.     By virtue of the acts described above, the Defendants defrauded the United States by failing to adhere to the Trade Agreements Act clauses.

86.     By virtue of the acts described above, the Defendants knowingly made, used or caused to be made or used, material false statements to obtain payment for false or fraudulent claims because the Defendants falsely represented the country of origin of the products that it sold and offered for sale to the United States Government's contractors *before June 7, 2008* in violation of the Trade Agreements Act.

87.     The United States Government relied upon these statements and has been damaged and continues to be damaged in substantial amounts.  The exact amount of the damage is to be determined at trial.

## COUNT IV

*(False Claims Act, 31 U.S.C.  §3729 (a)(1)(B))*

88.     Plaintiff Fang realleges and incorporates by reference the allegations made in Paragraphs 1 through 69 of this Complaint.

89.     This is a claim for treble damages and for forfeitures under the False Claims Act, 31 U.S.C. § 3729 *et seq.*

90.     By virtue of the acts described above, the Defendants Fortinet and Arrow defrauded or caused the defrauding of the United States by failing to adhere to the Trade Agreements Act clauses.

91.     By virtue of the acts described above, the Defendants knowingly made, used or caused to be made or used, material false statements to obtain payment for false or fraudulent claims because the Defendants falsely represented the country of origin of the products that it

COMPLAINT

1    sold and offered for sale to the United States Government's contractors *after June 7, 2008* in

2    violation of the Trade Agreements Act.

3        92.    The United States Government relied upon these false statements and has been

4    damaged and continues to be damaged in substantial amounts.  The exact amount of the damage

5    is to be determined at trial.

6

7                                          **JURY DEMAND**

8        93.    Plaintiffs demand trial by jury on all claims

9                                             **PRAYER**

10       94.    WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

11       a.    That Defendants be found to have violated and be enjoined from future violations

12             of the federal False Claims Act, 31 U.S.C. § 3729 *et seq.*;

13

14       b.    That this Court enter judgment against Defendants in an amount equal to three

15             times the amount of damages the United States Government and the State of

16             California has sustained because of defendant's false or fraudulent claims, plus the

17             maximum civil penalty for each violation of the federal False Claims Act, 31

18             U.S.C. § 3729 *et seq.*;

19       c.    That Plaintiffs be awarded the maximum amount allowed pursuant to 31 U.S.C. §

20             3730(d) of the False Claims Act.

21

22       d.    That this Court enter judgment against Defendants in an amount equal to three

23             times the amount of damages the United States has sustained because of

24             Defendants' false or fraudulent claims, plus the maximum civil penalty for each

25             violation of the federal False Claims Act, the federal False Claims Act, 31 U.S.C.

26             § 3729 *et seq.*;

27

28

1    e.    That Plaintiffs be awarded all costs of this action, including expert witness fees,

2          attorneys' fees, and court costs; and,

3    f.    That Plaintiffs recover such other relief as the Court deems just and proper.

Dated: January 20, 2016

**SANFORD HEISLER KIMPEL, LLP**

By: _____
Felicia Medina (CA Bar No. 255804)
**SANFORD HEISLER KIMPEL, LLP**
111 Sutter Street, Suite 975
San Francisco, CA 94104
fmedina@sanfordheisler.com
Telephone: (415) 795-2020
Facsimile: (415) 795-2021

H. Vincent McKnight, Jr.
D.C. Bar No. 293811
**SANFORD HEISLER KIMPEL, LLP**
1666 Connecticut Avenue, N.W., Suite 300
Washington, D.C. 20009
Telephone: (202) 499-5211
Facsimile: (202) 499-5199

*Attorneys for Relator Yuxin "Jay" Fang*

COMPLAINT